# **EXHIBIT A**

## LOAN AGREEMENT

THIS LOAN AGREEMENT (herein "Agreement") is entered into this April 20, 2012 by and between CAPTAIN'S CAY HOTEL DAVENPORT, LLC, a Florida limited liability company (herein "Borrower"), whose address for notices under this Mortgage is 44199 US Highway 27 South, Davenport, FL 33837, and FIRST FARMER'S BANCORP, LLC, a Florida limited liability company (herein "Lender"), whose address for notices under this Mortgage is 12701 South John Young Parkway, Suite 201, Orlando, FL 32837, and NIRAJ V. PATEL, individually (herein referred to as "Guarantor").

### RECITALS:

A. Borrower has negotiated with Lender for a loan in the principal amount of THREE MILLION SEVEN HUNDRED SEVENTY SEVEN THOUSAND ONE HUNDRED FIFTY EIGHT DOLLARS AND NO CENTS ($3,777,158.00), which is secured, among other things, by a mortgage and security agreement encumbering real property owned by Borrower located in POLK County, Florida, and more particularly described on attached **Exhibit "A"** (herein referred to as "**Land**"), and the improvements thereon (the "**Improvements**") consisting of a 150 room motel. (The Improvements and the Land are hereinafter collectively referred to as the "**Premises**").

B. Borrower and Lender wish to enter into this Agreement in order to set forth (among other things) the terms and conditions of the loan.

NOW, THEREFORE, in consideration of the premises and the sum of Ten and No/100 Dollars ($10.00) each to the other in hand paid the receipt and sufficiency of which is hereby acknowledged, Borrower and Lender agree as follows:

### ARTICLE I
### LOAN DOCUMENTS

Prior to any disbursements, Borrower shall execute and deliver, or cause to be executed and delivered, to Lender the following documents (hereinafter collectively and together with this Agreement referred to as "**Loan Documents**"), all in a form satisfactory to Lender:

1. Note. A promissory note of even date herewith executed by Borrower and payable to the order of Lender in the principal amount of $3,777,158.00.

2. Mortgage and Note Modification and Renewal Agreement. A Mortgage and Security Agreement of even date (collectively the "**Mortgage**") encumbering (among other things) the Land which upon recordation shall constitute a first lien on said property, and which mortgage shall be in a form satisfactory to Lender and shall be subject only to those exceptions and matters satisfactory to Lender. The Mortgage shall contain a future advance clause allowing Lender, but not obligating Lender, to make future advances; provided, however, that the maximum principal amount to be secured by the Mortgage at any time or times shall be that amount set forth in the Mortgage.

3. UCC 1 Financing Statements. UCC-1 Financing Statements (state and local) covering all personal property, fixtures, and equipment placed or to be placed on or under said Premises, and such other documents as will insure Lender a first perfected security interest in and to said personal property, fixtures, and equipment, including all licenses, permits, plans and specifications relating to the development of the Land.

4. Assignment of Leases, Rents and Profits. A general collateral assignment of all contracts, leases, income, rents and profits from or concerning the Premises.

5. Mortgagee Title Insurance Binder and Policy. A mortgagee title insurance binder and policy to be in the face amount of $3,777,158.00, insuring the Mortgage as a valid first lien on the Land subject only to exceptions as shall be approved in writing by Lender issued by a title insurance company satisfactory to Lender, containing such endorsements, and in a form satisfactory to and approved by Lender, including such reinsurance agreements, if any, as shall

1

be approved by Lender. All standard title exceptions for survey matters and rights of parties in possession shall be eliminated from and not included in the mortgagee title insurance policy.

6. Unconditional Guaranty of Payment and Performance. Borrower's obligations of payment and performance under this Agreement and under the documents evidencing, securing, or in any way related to the loan by Lender to Borrower shall be unconditionally jointly and severally guaranteed by Guarantor, in a form satisfactory to Lender.

7. Survey and Survey Affidavit. A survey, certified to Lender and the title insurance company, satisfactory to Lender, of all properties covered by the Mortgage showing public access to the Premises and all improvements and no encroachments or easements on the property lines, along with a survey affidavit executed by Borrower evidencing that no improvements have been constructed on the Premises which are not disclosed on the survey. The Survey shall additionally certify to Lender whether the Land is or is not located within an area identified pursuant to the Flood Disaster Act of 1973 as having flood hazards.

8. Environmental Indemnification Agreement. An agreement by the Borrower and Guarantor in favor of Lender whereby they jointly and severally warrant that the Premises do not and shall not contain at any time any hazardous pollutants or toxic materials and whereby they jointly and severally indemnify Lender against any of same and agree to certain other terms and conditions concerning such substances.

9. Agreement to Comply With The Americans With Disabilities Act of 1990 and Florida Americans With Disabilities Accessibility Implementation Act. An Agreement by the Borrower in favor of Lender whereby Borrower agrees to comply with the Americans With Disabilities Act of 1990 and Florida Americans With Disabilities Accessibility Implementation Act.

10. Agreement Regarding Closing of Loan. An Agreement between the parties regarding the closing of the Loan.

11. Collateral Assignment of Contract Rights A collateral assignment by the Borrower in favor of the Lender of all contract rights of the Borrower in and to any contracts or documents concerning the improvement or use of the Land.

ARTICLE II
WARRANTIES OF BORROWER

Borrower hereby warrants to Lender as follows:

1. Validity of Loan Documents. That the Loan Documents are in all respects legal, valid, and binding according to their terms and grant to Lender a direct, valid, and enforceable first lien security interest in the Premises and the personalty located thereon.

2. Corporate Existence of Borrower; Compliance with Law. That Borrower is a corporation duly incorporated, validly existing and in good standing under the laws of the jurisdiction of its incorporation. That Borrower has the corporate power to own its properties and to carry on its business as now being conducted, and Borrower is in compliance with all other requirements of law applicable to it and to its business.

3. Priority of Lien on Personalty. That no bill of sale, security agreement, financing statement, or other title retention agreement (except those executed in favor of Lender) has been or will be executed with respect to any personal property, equipment, or fixtures used in conjunction with the operation or maintenance of the Improvements.

4. Conflicting Transactions of Borrower. That the consummation of the transactions hereby contemplated and the performance of the obligations of Borrower under and by virtue of the Loan Documents will not result in any breach of, or constitute a default under, any mortgage, security deed, deed of trust, lease, bank loan or credit agreement, corporate charter or bylaws, or other instrument to which Borrower is a party or by which it may be bound or affected.

5. <u>Other Loans</u>. That the Borrower has not procured subordinate financing in connection with the Premises, nor has the Borrower procured a loan or loans from other sources other than Lender with regard to the Premises, and the Borrower will not procure such loans, unless approved by Lender in writing.

6. <u>Pending Litigation</u>. That there are no actions, suits, or proceedings pending, or to the knowledge of Borrower threatened against or affecting it or the Premises, or involving the validity or enforceability of any of the Loan Documents or the priority of the lien thereof, at law or in equity, or before or by any governmental authority, except actions, suits and proceedings which are fully covered by insurance and which, if adversely determined, would not substantially impair the ability of Borrower to perform each and every one of its obligations under and by virtue of the Loan Documents; and to the Borrower's knowledge it is not in default with respect to any order, writ, injunction, decree, or demand of any court or any governmental authority.

7. <u>Violations of Governmental Law, Ordinances or Regulations</u>. That Borrower has no knowledge of any violations or notices of violations of any federal or state law or municipal ordinance or order or requirement of the county or city in which the Premises are located or any municipal department or other governmental authority having jurisdiction affecting the Premises, which violations in any way relate to or affect the Premises.

8. <u>Compliance with Zoning Ordinances and Similar Laws</u>. That the use of the Premises comply and will comply with all governmental laws and regulations, and requirements, standards, and regulations of appropriate supervising boards of fire underwriters and similar agencies.

9. <u>Availability of Utilities</u>. That all utility services necessary for the Improvements and the operation thereof for their intended purpose are available on or at the boundaries of the Land, including water supply, storm and sanitary sewer facilities, electric and telephone facilities.

10. <u>Condition of Premises</u>. That the Premises are not now damaged or injured as a result of any fire, explosion, accident, flood, or other casualty.

11. <u>Brokerage Commissions</u>. That any brokerage commissions due in connection with the transaction contemplated hereby have been paid in full and that any such commissions coming due in the future will be promptly paid by Borrower. Borrower agrees to and shall indemnify Lender from any liability, claims, or losses arising by reason of any such brokerage commissions. This provision shall survive the repayment of the loan made in connection herewith and shall continue in full force and effect so long as the possibility of such liability, claims or losses exists.

12. <u>Growth Management Compliance</u>. The Land, the Improvements and their use are in full compliance with all aspects of Florida Statutes Chapter 163, as amended (Growth Management Act), and the applicable local comprehensive plan adopted pursuant thereto.

13. <u>Recitals</u>. The Recitals are true and correct and are incorporated herein by reference verbatim.

## ARTICLE III
## COVENANTS OF BORROWER

Borrower hereby covenants and agrees with Lender as follows:

1. <u>Other Loans</u>. To procure no subordinate financing in connection with the Premises, nor to procure a loan or loans from other sources other than Lender with regard to the Premises, unless approved by Lender in writing.

2. <u>Insurance</u>. To obtain such insurance or evidence of insurance as Lender may reasonably require, including but not limited to the following:

(i) <u>Hazard Insurance</u>. With respect to any buildings now or hereafter constructed on the Lands, "special form" coverage insurance, and such other hazard insurance

3

(including but not limited to business interruption insurance and rent loss insurance) as Lender may require with standard non-contributing mortgagee clauses and standard subrogation clauses, such insurance to be in such amounts and form and by such companies as shall be approved by Lender, and the originals of such policies (together with appropriate endorsements thereto, evidence of payment of premiums thereon, and written agreement by the insurer or insurers therein to give Lender thirty (30) days' prior written notice of intention to cancel or amend) shall be promptly delivered to Lender; such insurance to be obtained immediately upon completion of construction of said Improvements and before issuance of the Certificate of Occupancy and before any portion of the Premises is occupied by Borrower or any tenant of Borrower with such insurance to be kept in full force and effect at all times thereafter until the payment in full of the loan evidenced by the Note.

(ii) <u>Comprehensive General Liability and Statutory Workers' Comprehensive Insurance</u>. A certificate from an insurance company indicating that Borrower and Contractor are covered to the satisfaction of Lender by comprehensive general liability insurance coverage and statutory workers' compensation coverage.

(iii) <u>Flood Insurance</u>. Flood insurance issued by an acceptable company in the amount of the loan or the maximum coverage available or appropriate evidence that such insurance is not necessary.

3. <u>Collection of Insurance Proceeds</u>. To cooperate with Lender in obtaining for Lender the benefits of any insurance or other proceeds lawfully or equitably payable to them in connection with the transactions contemplated hereby and the collection of any indebtedness or obligation of Borrower to Lender incurred hereunder (including the payment by Borrower of the expense of an independent appraisal on behalf of Lender in case of a fire or other casualty affecting the Premises).

4. <u>Application of Loan Proceeds</u>. To use the proceeds of the loan being made pursuant to the Loan Documents solely for the purpose of paying for the costs contained in the Use of Proceeds Schedule (hereinafter defined) and in no event to use any of the loan proceeds for personal, family or household purposes.

5. <u>Expenses</u>. To pay, upon demand by Lender all costs of closing the loan contemplated hereunder and all expenses of Lender with respect thereto including but not limited to fees of Lender's Inspector, attorneys' fees (including attorneys' fees, paralegal fees and other fees and costs incurred by Lender subsequent to closing of the loan in connection with the disbursement, administration, collection, restructure, amendment, or transfer of the loan whether prior to or after commencement of litigation, mediation, arbitration, trial, retrial, appeal, bankruptcy or any other proceedings), advances, recording expenses, surveys, title insurance premiums, intangible taxes, documentary stamps, surtax and other revenue fees, escrow fees, recording costs, architect or engineer's costs and inspection fees, expenses of foreclosure (including reasonable attorneys' fees) and similar items, and to allow all closing papers, loan documents and other legal matters to be subject to the approval of Lender's attorneys. Following an event of default, Lender shall have the right and option to deduct the amount of any such expense from the un-disbursed loan proceeds and such deduction shall constitute a loan disbursement under this Agreement.

6. <u>Access</u>. Except for driveways located on the Premises, the rights of way for all roads necessary for the full utilization of the Improvements for their intended purposes have either been acquired by the appropriate governmental authority or have been dedicated to public use and accepted by such governmental authority, and all such roads shall have been completed, or all necessary steps shall have been taken by the Borrower and such governmental authority to assure the complete construction and installation thereof prior to the date upon which access to the Premises via such roads will be necessary. All curb cuts and traffic signals shown on the plans and specifications are existing or have been fully approved by all necessary governmental authorities.

7. <u>Right of Lender to Inspect Premises</u>. To permit Lender and its representatives and agents to enter upon the Premises and to inspect the Improvements and all materials to be used in the construction thereof and to cooperate and cause Contractor to cooperate with Lender and its representatives and agents during such inspections (including making available to Lender

working copies of the Plans and Specifications together with all related supplementary materials), provided, however, that this provision shall not be deemed to impose upon Lender any obligation to undertake such inspections.

8. Books and Records. To keep and maintain proper and accurate books, records and accounts reflecting all items of income and expense of Borrower in connection with the Premises and the construction thereon; and, upon the request of Lender, to make such books, records, and accounts immediately available to Lender for inspection or independent audit. Such inspection shall take place in Davenport, Florida, at the offices of Borrower during normal business hours.

9. Articles of Incorporation. To furnish Lender a certificate of good standing of Borrower certified by the Secretary of State of the state of incorporation of Borrower. Borrower shall also furnish to Lender the Operating Agreement of Borrower accompanied by a certificate from an appropriate representative of Borrower that the copy is complete and that neither the Operating Agreement has not been amended, annulled, rescinded, or revoked since the date of the certificate of the Secretary of State and a copy of resolutions of the Borrower authorizing the execution, delivery, and performance of the Loan Documents and the borrowings hereunder, and specifying the members of Borrower authorized to execute the Loan Documents, accompanied by a certificate from an appropriate manager or member that the resolutions are true and complete, were duly adopted at a duly called meeting in which a quorum was present and acting throughout, or were duly adopted by written action, and have not been amended, annulled, rescinded or revoked in any respect and remain in full force and effect on the date of the certificate funds.

The Operating Agreement will not, throughout the term of the Loan, be in any manner changed, modified or altered without the prior written consent of Lender.

10. Additional Documents. To perform hereunder as follows:

(i) Preservation of Security. To sign and deliver to Lender such documents, instruments, assignments, and other writings, and to do such other acts necessary or desirable, to preserve and protect the collateral at any time securing or intended to secure the Note, as Lender may require.

(ii) This Agreement. To do and execute all and such further lawful and reasonable acts, conveyances, and assurances in the law for the better and more effective carrying out of the intents and purposes of this Agreement as Lender shall reasonably require from time to time.

(iii) Assignment of Rents and Leases. If requested by Lender, to furnish a collateral assignment of Borrower's interest in leases and rents in the Premises, assigning to Lender all leases now or hereafter entered into by Borrower and demising all or any part of the Premises.

(iv) Certificate of Occupancy. To furnish to Lender a certificate of occupancy or any other necessary certificate required by any governmental agency.

## ARTICLE IV
## FINANCIAL STATEMENTS AND COVENANTS

1. Financial Statements and Tax Returns. Notwithstanding any provision in the Loan Documents to the contrary, the Borrower shall, until all obligations of the Borrower to Lender have been satisfied in full, provide to Lender the following:

(i) Borrower's internally prepared, quality financial statements, quarterly, (on forms approved by Lender) not later than fifteen (15) days of quarter-end;

(ii) Borrower's Federal Income Tax Returns within thirty (30) days after same are filed with the Internal Revenue Service. If an extension is filed, Borrower shall provide to Lender a copy of the extension within thirty (30) days of filing same with the Internal Revenue

5

Service. Failure to furnish such statements shall, at Lender's option, be an Event of Default under the terms of this Loan Agreement;

(iii) Hotel operating statistics, quarterly, within fifteen (15) days of quarter-end. Operating statistics shall include, but may not be limited to, monthly occupancy rates and monthly average daily rates; and,

(iv) Verification of the Borrower's liquid assets provided in the form of bank and brokerage statements.

2. <u>Debt Service Coverage</u>. The Borrower shall be prohibited from making payments on member loans and paying distributions to members until its traditional debt service coverage is 1.25X or greater and the outstanding principal balance of the Note is paid down to the lessor of: (i) _____ or less, or (ii) a loan to value of seventy-five percent (75%). Debt Service Coverage is calculated by dividing the sum of (net income after taxes plus depreciation, amortization, interest expense and capitalized/operating lease payments less dividends/distributions) by the sum of (current portion of long term debt reported in the current year, interest expense reported in the current year and capitalized/operating lease payments reported in the current year).

## ARTICLE V
## DEFAULTS

An event of default shall be deemed to have occurred hereunder if:

1. <u>Default Under Promissory Note</u>. Any failure to make any payment required in the Note; or

2. <u>Default Under Loan Documents</u>. Any default or event of default occurs and continues under any of the Loan Documents or any other document executed in conjunction with the Loan; or

3. <u>Breach of Warranty/Failure To Strictly Comply With The Covenants</u>. Any warranties or covenants made or agreed to be made in any of the Loan Documents or any other document executed in conjunction with the Loan shall be breached by Borrower or shall prove to be false or misleading or the Borrower shall have failed to strictly comply with same on a timely basis; or

4. <u>Filing of Liens Against the Premises</u>. Any lien for labor, material, taxes, or otherwise shall be filed against the Premises and not be removed or otherwise discharged within ten (10) days thereafter; or

5. <u>Material Adverse Change</u>. Borrower or any Guarantor shall suffer any material adverse change in financial condition which, in the reasonable opinion of Lender, could impair the ability of the Borrower to perform all of its duties and obligations under the Loan Documents or the Guarantor to perform under his/its or their guaranty; or

6. <u>Levy Upon the Premises</u>. A levy be made under any process on, or a receiver be appointed for the Premises or any other property of Borrower; or

7. <u>Bankruptcy or Insolvency of Borrower or Guarantor</u>.

(i) The filing by the Borrower or any Guarantor of a voluntary petition in bankruptcy for adjudication as a bankrupt or insolvent, or the filing by the Borrower or any Guarantor of any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for itself under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, or the Borrower or any Guarantor seeking or consenting to or acquiescing in the appointment of any trustee, receiver or liquidator of the Borrower or any Guarantor or of all of the rents, revenues, issues, earnings, profits or income thereof, or the making of any general assignment for the benefit of creditors, or the admission in writing of its inability to pay its debts generally as they become due; or

    (ii) The failure to timely answer or to discharge within thirty (30) days of filing a petition filed against the Borrower or any Guarantor seeking any reorganization, arrangement, composition, readjustment, liquidation or dissolution or similar relief under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, or the appointment of any trustee, receiver or liquidator for the Borrower or any Guarantor, or of all or any substantial part of the mortgaged property or of any or all of the rents, revenues, issues, earnings, profits or income thereof without the consent or acquiescence of the Borrower or any Guarantor; or

  8. <u>Assignment for the Benefit of Creditors</u>. Borrower or any Guarantor shall make a general assignment for the benefit of creditors; or

  9. <u>Transfer of Premises</u>. Borrower shall without the prior written consent of Lender voluntarily or by operation of law sell, transfer, or convey all or any part of its interest in the Premises or in any of the personalty located thereon or used or intended to be used in connection therewith excepting only transfers due to involuntary condemnation which do not render the property useless for its intended purpose hereunder; or

  10. <u>Lien Against Premises</u>. Borrower grants any lien or encumbrance upon the Premises; or

  11. <u>Change in Ownership of Borrower</u>. Any change in the ownership, membership or control of Borrower without the Lender's prior written approval; or

  12. <u>Failure to Disprove Default</u>. Lender shall reasonably suspect the occurrence of one or more of the above said events of default and Borrower, upon request of the Lender, shall fail to provide evidence reasonably satisfactory to Lender that such event or events of default have not in fact occurred.

### ARTICLE VI
### REMEDIES OF LENDER

  Upon the occurrence of any one or more of the events of default set out in Article V hereof, Lender shall at its option be entitled, in addition to and not in lieu of the remedies provided for in the Notes, Mortgage, Guaranties, or other documents executed in connection with the loan, to proceed to exercise any of the following remedies:

  1. <u>Default Constitutes Default Under Loan Documents</u>. Borrower agrees that the occurrence of such event of default shall constitute a default (or event of default) under each of the Loan Documents, thereby entitling Lender (i) to exercise any of the various remedies therein provided, including but not limited to the acceleration of the indebtedness evidenced by the Note and the foreclosure of the Mortgage, and (ii) cumulatively to exercise all other rights, options, and privileges provided by law or in equity including but not limited to the option to cease or withhold any further advances of the Loan proceeds and declare a default under the Loan.

  2. <u>Right of Lender to Assume Possession</u>. Borrower agrees, upon the request of Lender, to vacate the premises and permit Lender (i) to enter into possession, and (ii) to employ security watchmen to protect the Premises.

### ARTICLE VII
### MISCELLANEOUS

  In the event of a conflict with other provisions of this Agreement, the provisions of this Article VII shall control.

  1. <u>Notices To All Parties</u>. All notices, statements, requests, and demands given to or made upon any party hereto in accordance with the provisions of this Agreement shall be deemed to have been given or made when hand delivered or deposited in the Certified Mails of the United States, Return Receipt Requested, postage prepaid, addressed to such party at the address or addresses hereinabove stated following the names of the respective parties, or to a different address in accordance with any un-revoked written direction from such party to the

7

other parties hereto, except in cases herein where it is expressly provided that such notice, request, or demand shall not be effective until received by the party to whom it is intended.

2. No Partnership or Joint Venture. Nothing herein nor the acts of the parties hereto shall be construed to create a partnership or joint venture between Borrower and Lender.

3. No Assignment by Borrower. This Agreement may not be assigned by Borrower without the prior written consent of Lender. If Lender approves an assignment hereof by Borrower, Lender shall be entitled to make advances to such assignee and such advances shall be evidenced by the note and secured by the mortgage and Loan Documents. Borrower shall remain liable for payment of all sums advanced hereunder before and after such assignment, and all Guarantor shall remain liable under the guaranties.

4. Relief from Automatic Stay. The Borrower hereby agrees that, in consideration of the Lender funding the Loan, in the event that the Borrower shall (i) file with any bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 of the United States Code, as amended ("Title 11"); (ii) be the subject of any order for relief issued under Title 11; (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to insolvency or bankruptcy, or other relief from creditors for debtors; (iv) have sought or consented to or acquiesced in the appointment of any trustee, receiver, conservator, or liquidator; (v) be the subject of any order, judgment, or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to insolvency or bankruptcy, or other relief from creditors for debtors, the Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11, or otherwise, on or against the exercise of the rights and remedies otherwise available to the Lender under this Loan Agreement and the Loan Documents, and as otherwise provided by law.

5. Furnishing of Documents and Funds. The Borrower shall comply with all warranties and covenants set forth in this Agreement and shall furnish all documents and funds to the Lender in a timely basis with time being of the essence

6. Appraisals. In addition to the appraisals of the real property mortgaged as collateral for the Loan (the "**Real Property**") required by Lender prior to closing of the Loan, updated appraisals shall be prepared at Borrower's expense when requested by Lender. Such appraisals shall be prepared in accordance with written instructions from Lender by a professional appraiser selected and engaged by Lender. Borrower shall cooperate fully with the appraisal process and shall allow the appraisers reasonable access to the Real Property and its tenants.

7. Reappraisal of Real Property. Borrower acknowledges that Lender was induced to enter into the subject Loan transaction based upon a specific loan-to value ratio (the "**Original Loan-to-Value Ratio**"). The Original Loan-to-Value Ratio was based upon the appraised value (the "**Original Appraised Value**") of the Real Property set forth in the appraisal Borrower submitted to Lender prior to the closing of the subject Loan transaction. If any updated appraisal received by Lender pursuant to the above paragraph reflects that the appraised value of the Real Property has decreased from the Original Appraised Value and if such decrease results in a loan-to-value ratio which is higher than the Original Loan-to-Value Ratio, Borrower shall within ten (10) days of Lender's written request make a principal payment (the "**Prepayment**") under the Promissory Note in an amount sufficient to maintain the Original Loan-to-Value Ratio. Such Prepayment shall not entitle Borrower to a release of any of the Real Property.

## ARTICLE VIII
## GENERAL CONDITIONS

The following conditions shall be applicable throughout the term of this Agreement:

1. Rights of Third Parties. All conditions of the obligations of Lender hereunder, including the obligation to make advances, are imposed solely and exclusively for the benefit of Lender, its successors and assigns, and no other person shall have standing to require satisfaction

8

of such conditions in accordance with their terms or be entitled to assume that Lender will refuse to make advances in the absence of strict compliance with any or all thereof, and no other person shall, under any circumstances, be deemed to be a beneficiary of such conditions, any and all of which may be freely waived in whole or in part by Lender at any time if in its sole discretion it deems it desirable to do so. In particular, Lender makes no representations and assumes no obligations as to third parties concerning the quality of the construction of the Improvements by Borrower or the absence therefrom of defects. In this connection Borrower agrees to and shall indemnify Lender from any liability, claims or losses, and attorneys' fees resulting from the disbursement of the loan proceeds or from the condition of the Premises whether related to the quality of construction or otherwise and whether arising during or after the term of the loan made by Lender to Borrower in connection herewith. This provision shall survive the repayment of said loan and shall continue in full force and effect so long as the possibility of such liability, claims or losses exists.

2. Evidence of Satisfaction of Conditions. Any condition of this Agreement which requires the submission of evidence of the existence or nonexistence of a specified fact or facts implies as a condition the existence or nonexistence, as the case may be, of such fact or facts. However, Lender shall at all times be free independently to establish to its satisfaction and in its absolute discretion such existence or nonexistence.

3. Assignment. Lender shall have the unconditional right to assign all or any part of its interest hereunder to any third parties, but Borrower may not assign this Agreement or any of its rights or obligations hereunder without the prior written consent of Lender.

4. Successors and Assigns Included in Parties. Whenever in this Agreement one of the parties hereto is named or referred to, the heirs, legal representatives, successors, and assigns of such parties shall be included, and all covenants and agreements contained in this Agreement by or on behalf of the Borrower or by or on behalf of Lender shall bind and inure to the benefit of their respective heirs, legal representatives, successors and assigns whether so expressed or not.

5. Headings. The headings of the sections, paragraphs and subdivisions of this Agreement are for the convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

6. Invalid Provisions to Affect No Others. If fulfillment of any provision hereof or any transaction related hereto at the time performance of such provisions shall be due, shall involve transcending the limit of validity prescribed by law, then ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity; and if any clause or provision herein contained operates or would prospectively operate to invalidate this Agreement in whole or in part, then such clause or provision only shall be held for naught as though not herein contained, and the remainder of this Agreement shall remain operative and in full force and effect.

7. Neuter and Gender. Whenever the singular or plural number, masculine or feminine, or neuter gender is used herein, it shall equally include the other.

8. Amendments. Neither this Agreement nor any provision hereof may be changed, waived, discharged, or terminated orally, but only by instrument in writing signed by the party against whom enforcement of the change, waiver, discharge, or termination is sought.

9. Governing Law. This Agreement shall be governed by and construed according to the laws of the State of Florida.

10. Time. Time is of the essence with respect to all duties and periods of time set forth herein.

11. WAIVER OF RIGHT TO JURY TRIAL. BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS LOAN AGREEMENT AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING,

STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE LENDER ENTERING INTO THIS AGREEMENT AND MAKING THE LOAN OR EXTENSION OF CREDIT EVIDENCED BY THE NOTE.

**IN WITNESS WHEREOF**, Borrower and Lender have hereunto caused these presents to be executed on the date first above written.

Signed, sealed and delivered in the presence of:

"WITNESSES"

Print Name: Amanda Isley

Print Name: William R. Huseman

"BORROWER"

CAPTAIN'S CAY HOTEL DAVENPORT, LLC, a Florida limited liability company

By: _____
Niraj V. Patel, Its Managing Member

"WITNESSES"

Print Name: Amanda Isley

Print Name: William R. Huseman

"LENDER"

FIRST FARMER'S BANCORP, LLC, a Florida limited liability company

By: _____
NIK A PATEL, President

"WITNESSES"

Print Name: Amanda Isley

Print Name: William R. Huseman

"GUARANTOR"

_____
NIRAJ V. PATEL

10