# **EXHIBIT B**

"85% percent of this Pool Loan has been sold for value"
By: _____
Name: <u>Nikesh Patel</u>
Title: <u>President & CEO</u>

## PROMISSORY NOTE

$3,777,158.00             April 30, 2012             Tavares, Florida

FOR VALUE RECEIVED, the undersigned, CAPTAIN'S CAY HOTEL DAVENPORT, LLC, a Florida limited liability company ("**Borrower**"), promises to pay to the order of FIRST FARMER'S BANCORP, LLC, a Florida limited liability company ("**Lender**"), whose address is 12701 South John Young Parkway, Suite 201, Orlando, FL 32837, or at such other place as the Lender of this Note may designate in writing, the principal sum of THREE MILLION SEVEN HUNDRED SEVENTY SEVEN THOUSAND ONE HUNDRED FIFTY EIGHT DOLLARS AND NO CENTS ($3,777,158.00), together with interest thereon at the Interest Rate, in lawful money of the United States, which shall be legal tender in payment of all debts and dues, public and private, at the time of said payment, said principal and interest to be payable as set forth below.

1) INTEREST RATE.

   a) Interest on the unpaid principal balance due hereunder shall accrue at an initial interest rate equal to Four And Three Quarters Percent (4.75%) per annum (the "Applicable Interest Rate"). Thereafter the Applicable Interest Rate will be adjusted as follows: On a date which is three (3) months from the first day of the first calendar month preceding the Initial Payment Date (defined below), and thereafter on a date three (3) months from the previous change date (each, a "Change Date"), the Applicable Interest Rate will adjust to reflect the then current "Prime Rate" plus One And One Half Percent (1.5%). For purposes hereof, the "Prime Rate" shall mean, at any time, the rate of interest quoted in the Wall Street Journal, Money Rates Section as the "Prime Rate" (currently defined as the base rate on corporate loans posted by at least 75% of the nation's thirty largest banks). In the event that the Wall Street Journal quotes more than one rate, or a range of rates as the Prime Rate, then the Prime Rate shall mean the average of the quoted rates. In the event that the Wall Street Journal ceases to publish the Prime Rate, then the Prime Rate shall be the average Prime Rate of the three largest U.S. money center commercial banks, as determined by Lender.

   b) Interest shall be calculated on the basis of a 360-day year, actual days elapsed.

2) MATURITY DATE. April 30, 2037.

3) PAYMENTS. Borrower agrees to pay sums due under this Note in payments of principal and interest. The initial monthly payment shall be in the amount of TWENTY ONE THOUSAND FIVE HUNDRED THIRTY FOUR DOLLARS AND TWENTY THREE CENTS ($21,534.23). However, monthly payment amounts may change if there is a change in the Applicable Interest Rate. At the time of a change of the Applicable Interest Rate, the new monthly payment shall be calculated based upon the principal balance of this Note on the applicable Change Date through the remaining term of the original twenty-five (25) year amortization schedule, and the Applicable Interest Rate then in effect. The first installment of principal and interest shall be due on June 1, 2012 (the "Initial Payment Date"), and additional payments shall be due on the 1st day of each calendar month thereafter (each, a "Payment Date"). The entire principal balance and all accrued and unpaid interest thereon shall be due and payable on the Maturity Date. Each installment payment shall be applied as follows: (i) first, to the payment of late charges and interest computed at the Default Rate (defined below), if applicable, (ii) second, to the payment of interest at the Applicable Interest Rate; and (m) third, the balance toward the reduction of the principal balance. Borrower shall make all payment on the Note by ACH wire transfer.

4) PREPAYMENT PENALTY. The Borrower shall pay a prepayment premium equal to five percent (5.00%) of any principal amount prepaid on this Note during the first year of this Note, four percent (4.00%) of any principal amount prepaid on this Note during the second year of this Note, three percent (3.00%) of any principal amount prepaid on this Note during the third year of this Note, two percent (2.00%) of any principal amount prepaid on this Note during the fourth

year of this Note, and one percent (1.00%) of any principal amount prepaid on this Note during the fifth year of this Note. No part of the Note may be prepaid without paying the prepayment penalty. No part of the Note may be prepaid without giving Lender at least thirty (30) days advance written notice by certified mail, return receipt requested. Such notice must specify: (i) the date on which prepayment is to be made and (ii) the principal amount of each prepayment. Lender shall not be obligated to accept any prepayment unless it is accompanied by all other amounts due in connection therewith.

5) MORTGAGE AND SECURITY AGREEMENT. As security for the payment of the indebtedness evidenced by this Note ("**Liabilities**"), the undersigned (among other things) has granted or has caused to be granted to Lender a Mortgage and Security Agreement dated of even date herewith encumbering and conveying real estate and property therein described and duly recorded among the public records of **Polk** County, Florida ("**Mortgage**").

6) DEFAULT RATE. Borrower agrees that upon the occurrence (and Leader's declaration) of the Event of Default, Lender shall be entitled to receive and Borrower shall pay interest on the entire unpaid principal sum at the maximum interest rate which Borrower may by law pay (the "Default Rate"), and shall be due and payable ON DEMAND. The Default Rate shall be computed from the occurrence of the Event of Default. Interest calculated at the Default Rate shall be deemed secured by the Mortgage. Any judgment obtained by Lender against Borrower as to any amounts due under this Note shall also bear interest at the Default Rate. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Note, nor as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

7) INTEREST LIMITATION. Anything in this note, the Mortgage or any other agreements or arrangements with the undersigned in connection with the loan evidenced by this Note to the contrary notwithstanding, in no event shall the amount of interest due hereunder, together with all amounts reserved, charged, or taken by Lender as compensation for fees, services, or expenses incidental to the making, negotiation or collection of the loan evidenced hereby, which are deemed to be interest under applicable law, exceed the maximum rate of interest on the unpaid principal balance hereof allowed from time to time by applicable law. If any sum is collected in excess of the applicable maximum rate of interest, the excess sum collected shall be applied to reduce the principal debt or be refunded to Borrower, at Lender's option.

8) CONSENT AND WAIVER. Each Obligor (which term shall mean and include each Borrower, Borrower, Guarantor, and all others who may become liable for all or any part of the obligations evidenced and secured hereby), does hereby, jointly and severally: (a) consent to any forbearance or extension of the time or manner of payment hereof and to the release of all or any part of any security held by the Lender to secure payment of this Note and to the subordination of the lien of the mortgage and any other instrument of security securing this Note as to all or any part of the property encumbered thereby, all without notice to or consent of that party; (b) agree that no course of dealing or delay or omission or forbearance on the part of the Lender in exercising or enforcing any of its rights or remedies hereunder or under any instrument securing this Note shall impair or be prejudicial to any of the Lender's rights and remedies hereunder or to the enforcement hereof and that the Lender may extend, modify or postpone the time and manner of payment and performance of this Note and any instrument securing this Note, may grant forbearances and may release, wholly or partially, any security held by the Lender as security for this Note and release, partially or wholly, any person or party primarily or secondarily liable with respect to this Note, all without notice to or consent by any party primarily or secondarily liable hereunder and without thereby releasing, discharging or diminishing its rights and remedies against any other party primarily or secondarily liable hereunder; (c) waive notice of acceptance of this Note, notice of the occurrence of any default hereunder or under any instrument securing this Note and presentment, demand, protest, notice of dishonor and notice of protest and notices of any and all action at any time taken or omitted by the Lender in connection with this Note or any instrument securing this Note and waives all requirements necessary to hold that party to the liability of that party; (d) waive any "venue privilege" and/or "diversity of citizenship privilege" which they have now or have in the future, and do hereby specifically agree, notwithstanding the provision of any state or federal law to the contrary, that the venue for the enforcement, construction or interpretation of this note shall be the County Court, Circuit Court or Federal Court selected by the Lender hereof and they do hereby specifically waive the right to sue or be

sued in the court of any other county in the State of Florida, any court in any other state or country or in any federal court, or in any state or federal administrative tribunal.

9) ATTORNEYS' FEES. All parties liable for the payment of this Note agree to pay the Lender in addition to the principal, premium and interest due and payable hereon, reasonable paralegal fees, attorneys' fees and costs, whether or not an action be brought, for the services of counsel employed after maturity or default to collect this Note or any principal or interest due hereunder, or to protect the security, if any, or enforce the performance of any other agreement contained in this Note or in any instrument of security executed in connection with the loan evidenced hereby, including, but not limited to costs, paralegal fees and attorneys' fees and costs on any trial, or appellate proceedings, or in any proceedings under the United States Bankruptcy Code or in any post judgment proceedings.

10) EVENTS OF DEFAULT. The happening of any of the following events shall constitute a default or Event of Default hereunder: (a) failure of any Obligor to pay any principal, interest or any other sums required hereunder when due under this Note; or (b) a default or Event of Default shall occur in any instrument securing this Note or in any other instrument executed in connection with the loan evidenced hereby.

11) ACCELERATION. If a default or Event of Default shall occur hereunder and such default shall continue for ten (10) days then at the option of the Lender, the entire principal sum then remaining unpaid and accrued interest shall immediately become due and payable without notice or demand, and said principal shall bear interest from such date at the highest legal rate permitted by law, from time to time, to be charged by Lender, it being agreed that interest not paid when due shall, at the option of the Lender, draw interest at the rate provided for in this paragraph. Failure to exercise the above options shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

12) OTHER REMEDIES. If a default or an Event of Default shall occur Lender shall have in addition to its remedies under the Mortgage, this Note, Loan Agreement, and/or any other instrument securing or executed in conjunction with the loan evidenced hereby and applicable law all the remedies of a secured party under the Uniform Commercial Code of the State of Florida and, without limiting the generality of the foregoing, Lender shall have the right, at its option, and without notice or demand, to declare the entire amount of this Note remaining unpaid, and all other liabilities selected by Lender, immediately due and payable, less any unearned interest or other charges and any rebates required by law (it being the intention hereof that under no circumstances shall Lender be entitled to receive at any time any charges not allowed or permitted by law or any interest in excess of the maximum allowed by law); to set off against this Note all money owed by Lender in any capacity to the undersigned or any guarantor hereof, whether or not due; and Lender shall be deemed to have exercised such right of setoff and to have made a charge against any such money immediately upon the occurrence of such default even though such charge is made or entered in the books of Lender subsequent thereto. Upon disposition of any collateral after the occurrence of any default, undersigned shall be and remain liable for any deficiency; and Lender shall account to undersigned for any surplus, but Lender shall have the right to apply all or any part of such surplus (or to hold the same as a reserve) against any and all other liabilities of undersigned to Lender.

13) FLORIDA LAW. This Note is executed under seal and constitutes a contract under the laws of the State of Florida, and shall be enforceable in a Court of competent jurisdiction in that State, regardless of in which State this Note is being executed.

14) HEADINGS. The headings of the paragraphs contained in this Note are for convenience of reference only and do not form a part hereof and in no way modify, interpret or construe the meaning of the parties hereto.

15) DOCUMENTARY STAMPS. Documentary stamps in the amount required by Florida Law have been purchased and affixed to the Mortgage of even date which secures this Note.

16) LATE CHARGE. The Lender may collect a late charge not to exceed an amount equal to five percent (5%) of any installment of principal or interest which is not paid within ten (10) days of the due date thereof, to cover the extra expense involved in handling delinquent

payments, provided that collection of said late charge shall not be deemed a waiver by the Lender of any of its rights under this Note.

17) <u>MISCELLANEOUS</u>.

    a) The term "**Borrower**", as used herein, in every instance shall include the Borrower's heirs, executors, administrators, successors, legal representatives and assigns, and shall denote the singular and/or plural, the masculine and/or feminine, and natural and/or artificial persons whenever and wherever the context so requires or admits.

    b) This Note may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

All payments made on the indebtedness evidenced by this Note shall be applied first to repayment of monies paid or advanced by Lender on behalf of the Borrower in accordance with the terms of the Mortgage securing this Note, and thereafter shall be applied to payment of accrued interest, and lastly to payment of principal.

BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ENTERING INTO THIS AGREEMENT.

THIS NOTE CONSISTS OF FOUR (4) PAGES INCLUDING THE SIGNATURE PAGE.

                    CAPTAIN'S CAY HOTEL DAVENPORT, LLC, a
                    Florida limited liability company, Borrower

                    By: _____
                    Niraj V. Patel, It's Managing Member