# **EXHIBIT D**

| | |
|---|---|
| PREPARED BY AND RETURN TO:<br><br>RICHARD W. HENNINGS,<br>PROFESSIONAL ASSOCIATION<br>205 North Joanna Avenue<br>Tavares, Florida 32778 | INSTR # 2012084156<br>BK 08647 PGS 2043-2047 PG(s)5<br>RECORDED 05/14/2012 12:47:33 PM<br>RICHARD M WEISS, CLERK OF COURT<br>POLK COUNTY<br>RECORDING FEES 44.00<br>RECORDED BY T Dunn |
| | FOR CLERK'S USE ONLY |

## ASSIGNMENT OF LEASES AND RENTALS

THIS ASSIGNMENT OF LEASES AND RENTALS (hereinafter the "Assignment") is made this 30th day of April 2012, between CAPTAIN'S CAY HOTEL DAVENPORT, LLC, a Florida limited liability company (herein "**Assignor**"), whose address is 44199 US Highway 27 South, Davenport, FL 33837, and FIRST FARMER'S BANCORP, LLC, a Florida limited liability company (herein "**Assignee**"), whose address is 12701 South John Young Parkway, Suite 201, Orlando, FL 32837.

### WITNESSETH:

WHEREAS, Assignor is the owner of certain real property situated in Polk County, Florida, and more particularly described in Exhibit "A" attached hereto and by this reference made a part hereof (the "Property"); and,

WHEREAS, Assignee has agreed to loan THREE MILLION SEVEN HUNDRED SEVENTY SEVEN THOUSAND ONE HUNDRED FIFTY EIGHT DOLLARS AND NO CENTS ($3,777,158.00) to Assignor, and;

WHEREAS, as a condition of the above-described loan by Assignee to Assignor, Assignee has required Assignor to execute this Assignment.

NOW, THEREFORE, for and in consideration of and as security for the loan hereinafter described, the Assignor covenants, and agrees as follows:

1. The Assignor hereby grants, assigns, transfers, and sets over unto Assignee, and to the extent possible, grants a security interest in, any and all right, title and interest of Assignor in all income, rents, issues, profits, revenues, royalties, rights and benefits whether now existing, owned, held or hereafter acquired of and from the Property and each and every part and parcel thereof and of and from any business activity conducted by Assignor on or through use of the Property (herein called the "Rents, Issues and Profits"). Pursuant thereto, Assignor hereby grants, assigns, transfers and sets over, and to the extent possible, grants a security interest in, all leases, contracts for deed and contracts for sale and all other documents or contractual rights, written or verbal, covering any part or parcel of the Property, whether heretofore or hereafter made, executed and delivered, along with any deposits, accounts or chattel paper arising from any business activity conducted by Assignor on or through use of the Property, and any deposit accounts into which any of the proceeds of the foregoing are deposited.

Assignor further assigns and sets over unto the Assignee, and to the extent possible, grants a security interest in, all proceeds and products derived from the rights, interests and property of Assignor described above.

2. This Assignment shall remain in full force and effect until that certain Promissory Note made by Assignor payable to the order of Assignee of even date herewith in the original principal amount of THREE MILLION SEVEN HUNDRED SEVENTY SEVEN THOUSAND

1

ONE HUNDRED FIFTY EIGHT DOLLARS AND NO CENTS ($3,777,158.00), and all obligations secured by that certain Mortgage of even date herewith from Assignor to Assignee (herein called the "Mortgage"), such Mortgage encumbering, among other things, the Property, shall have been fully paid and satisfied, at which time this Assignment shall end.

3. It is agreed that if any of the property herein assigned is of a nature so that a security interest therein can be perfected under the Uniform Commercial Code, this instrument shall constitute a Security Agreement and Assignor agrees to join with Assignee in the execution of any financing statements and to execute any other instruments that may be required for the perfection or renewal of such security interests under the Uniform Commercial Code.

4. So long as there shall exist no default by Assignor in the payment of the principal sum, interest and indebtedness evidenced by the Note and secured hereby and by the Mortgage or in the performance of any obligation, covenant or agreement herein or in the Note, in the Mortgage, or in any other document executed in connection with the loan, Assignor shall have the right to collect the Rents, Issues and Profits as they come due, but such privilege shall not operate to permit the collection by Assignor of any installments of rent or other sums due in advance of the date prescribed in the lease(s) or contract(s) for the payment thereof.

5. Assignor hereby authorizes and empowers Assignee to collect the Rents, Issues and Profits as they shall become due, upon or at any time after default in the payment of the principal sum, interest and indebtedness evidenced by the Note and secured hereby and by the Mortgage or after default in the performance of any obligation, covenant or agreement contained herein or in the Note, in the Mortgage, or in any other document executed in connection with the loan or in any lease or contract on the part of Assignor to be performed. Assignor hereby directs each and all of the tenants of the Property or any part or parts thereof, all contract vendees and account debtors of Assignor to pay such rents or other payments as may now be due or shall hereafter become due to Assignee upon demand for payment thereof by Assignee. Upon demand by Assignee, all tenants, contract vendees and account debtors shall pay the rents, installment payments or other payments to Assignee without further inquiry. In addition to the above, Assignee may, after a default by Assignor, at its option, and without in any way waiving such default:

(i) exercise, either independently or concurrently, any of its rights or remedies under the Note, the Mortgage or any other document executed in connection with the loan; and/or

(ii) exercise, either independently or concurrently, any and all rights and remedies of a Secured party under the Uniform Commercial Code of the State of Florida; and/or

(iii) exercise, either independently or concurrently, any and all other rights and remedies available to Lender at law or in equity.

6. In no instance shall Assignee be responsible to lessees for payment of interest upon, or return of, any lease security deposits or guaranty payments or advanced rental payments nor to contract vendees for any deposits, down payments, or other payments made under any contract.

7. Assignee shall not be responsible for the control, care or management of the Property or for carrying out any of the terms and conditions of said lease or leases, or for any waste committed or permitted on the Property by any tenant. The Assignee shall not be liable by reason of any dangerous or defective condition of the Property resulting in loss or injury to any tenant or other person, and Assignor agrees to indemnify and hold Assignee harmless from any such liability.

8. Nothing herein contained shall be construed as making Assignee a mortgagee in possession, nor shall Assignee be liable for laches, or failure to collect said Rents, Issues and Profits, or other payments due, and it is understood that Assignee is to account only for such sums as are actually collected by it.

9. This Assignment is given as security for the performance of each and all of the obligations and covenants of the Note, and all other documents and security instruments given with respect to the Note. Amounts collected hereunder, less the expense of collection, including reasonable attorney's and paralegal's fees, (such fees to include attorney's fees incurred on appeal

2

or in bankruptcy proceedings), shall be applied on account of taxes and assessments on the Property, insurance premiums and principal and interest due under the Note.

10. Neither the execution of this Assignment, nor any action or inaction on the part of Assignee under this Assignment shall release Assignor from any of its obligations under any or all of the aforesaid leases, contracts for deed, contracts for sale, accounts, or chattel paper or constitute an assumption of any such obligations on the part of Assignee. No action or failure to act on the part of Assignor shall adversely affect or limit in any way the rights of Assignee under or through this Assignment or under any or all of the aforesaid leases, contracts for deed, contracts for sale, accounts or chattel paper.

13. Assignor covenants that at its sole expense it (a) will duly and punctually perform and comply with any and all representations, warranties, covenants, terms and provisions to be performed or complied with by it in the aforesaid leases and contracts; (b) will not voluntarily terminate, cancel or waive its rights or the obligations of any other party under any of the leases or contracts without the express written consent of Assignee; (c) will maintain such leases and contracts in full force and effect and make no alterations, changes or modifications thereto without Assignee's prior written consent; (d) will enforce the leases and contracts in accordance with their terms but will not dispossess or evict any tenant without notice to and approval by Assignee; (e) will appear in and defend any action or proceeding arising under or in any manner connected with any of the leases or contracts or of the representations, warranties, covenants and agreements of it or the other party or parties thereof; (f) will permit Assignee, through its designated agents, employees or such other persons as it may authorize, access to all, accounting books, leases, and business records whatsoever pertaining to the Property for the purpose of auditing, reviewing, inspecting or copying the same during regular business hours: (g) will not accept payment of rent for any lease more than one (I) month in advance without Assignee's express consent, except prepayments in the nature of security for the performance by the lessees thereunder; (h) will comply with all state and local laws and ordinances and all regulations and rules of administrative agencies affecting the rental and/or sales activities conducted on the Property; (i) will take all additional action to these ends as from time to time may be requested in writing by Assignee; and G) will present all future leases to Assignee for Assignee's review and approval prior to execution.

14. Assignor agrees from time to time to execute and deliver all such instruments and to take all such action for the purpose of further effectuating this Assignment and the carrying out of the terms hereof, as may be requested in writing by Assignee.

15. The Assignor will indemnify and save harmless the Assignee against any and all expenses, costs and fees, including reasonable attorneys' fees, whether or not an action be brought, and including such as are incurred on appeal, which the Assignee incurs or pays on account or growing out of any default, breach or failure to perform by the Assignor of any one or more of the covenants and agreements contained in either (a) this Assignment, (b) any item assigned hereby now in existence, or (c) any item assigned hereby and hereafter made, and such amounts incurred shall be secured hereby and by the lien of the Mortgage.

16. In the event any tax or assessment shall be levied or assessed against the Assignee on account of or incident to this Assignment, the Assignor will pay said tax as soon as it is due and payable, and if the Assignor shall fail to pay any such tax the Assignee may pay the same and the amount paid shall be repaid by the Assignor to the Assignee and shall be secured hereby and by the lien of the Mortgage and shall be immediately due and payable, together with interest at the highest legal rate permitted by law from time to time to be charged by Assignee, from and after the date the tax was paid by the Assignee.

17. In the event the Assignor defaults in, breaches or fails to perform anyone or more of the covenants and agreements contained in this Assignment, such shall constitute a default, breach or failure to perform under the Note, the Mortgage and any other documents executed in connection with the loan. All of the rights and remedies of the Assignee hereunder and under all other loan documents are cumulative and concurrent, and may be pursued singly, successively, or together against Assignor, the Property, the interests hereby assigned and any other security given at any time to secure payment of the Note, all at the sole discretion of Assignee. The rights and remedies provided by this Assignment are in addition to and not in limitation of the Assignee's rights under the terms of any other documents executed in connection with the loan.

18. It is understood and agreed that neither the existence of this Assignment nor the exercise of its privileges to collect such Rents, Issues and Profits hereunder, shall be construed as a waiver by Assignee or its successors and assigns, of the right to enforce payment of the debt hereinabove mentioned, in strict accordance with the terms and provisions of the Note evidencing the indebtedness for which this Assignment is given as additional security.

19. The term "leases" as used herein shall include any and all leases, rental agreements, subleases, licenses, franchises, permits, concessions or other agreements: (written or verbal, now or hereafter in effect) which grant the right upon the giving of a valuable consideration to temporarily occupy, use or have a possessory interest in and to the Property or any part thereof and shall also include any and all amendments, modifications, extensions, or renewals to any of the foregoing. The term "tenant" shall include all the parties thereto contracting with Assignor. The term "contracts" as used herein shall include all contracts for deed, contracts for sale or other similar agreements (written or verbal, now or hereafter in effect) which grant the right upon the giving of a valuable consideration to have a beneficial or outright ownership interest in all or any part of the Property and shall also include any amendments or modifications thereto. The term "contract vendee" and the term "account debtor" shall include all the parties thereto contracting with Assignor. The term "Assignor" shall include the party named as such, its heirs, successors and assigns. The term "Assignee" shall include the party named as such, its successors and assigns.

IN WITNESS WHEREOF, the Assignor has caused these presents to be executed under seal the day and year first above written.

CAPTAIN'S CAY HOTEL DAVENPORT, LLC, a Florida limited liability company

By: _____
Niraj V. Patel, Its Managing Member

_____
Signature of Witness

Shanna Pacsuta
Name of Witness Printed or Typed

_____
Signature of Witness

Carolyn A. Baker
Name of Witness Printed or Typed

The foregoing instrument was executed, sworn to and acknowledged before me this 2 day of May 2012 by Niraj V. Patel, Managing Member, CAPTAIN'S CAY HOTEL DAVENPORT, LLC, a Florida limited liability company, on behalf of the company, who did not take an oath and who produced a Florida driver's license as identification.

SHANNON PACSUTA
Commission # DD 903274
Expires October 15, 2013
Bonded Thru Troy Fain Insurance 800-385-7019

_____
Signature of Notary Public

Shanna Pacsuta
Name of Notary Public Typed, Printed or Stamped

(SEAL)

4

RE: Assignment of Rents

## EXHIBIT A

### [Legal Description of Property]

Three certain parcels of land in the Southwest ¼ of Section 7, Township 26 South, Range 27 East, County of Polk, State of Florida, described as follows:

PARCEL A: Beginning at the center of said Section 7, thence along the Easterly line of said Southwest ¼, South 00°30'30" East, 242.95 feet, thence South 62°06'00" West, 87.63 feet, thence North 27°54'00" West, 262.18 feet, thence parallel to the Northerly line of said Southwest ¼, South 89°21'10" West, 60.00 feet, thence South 62°06'00" West, 743.14 feet, thence North 27°54'00" West, 166.41 feet, thence South 62°06'00" West, 200.00 feet, to the Northeasterly right of way line of U.S. 27, thence along said Northeasterly right of way line North 27°54'00" West, 30.00 feet, thence North 62°06'00" East, 250.00 feet, thence North 27°54'00" West, 216.87 feet to the Northerly line of said Southwest ¼, thence along said Northerly line North 89°21'10" East, 1063.99 feet to the Point of Beginning.

PARCEL B: From the Northeast corner of said Southwest ¼; thence along the Northerly line of said Southwest ¼, South 89°21'10" West 1353.08 feet to the Northeasterly right of way line of U.S. 27; thence along said Northeasterly right of way line South 27°54'00" East 69.29 feet; thence North 89°21'10" East 7.93 feet; thence continuing along said Northeasterly right of way line South 27°54'00" East 180.71 feet to the True Point of Beginning, thence continuing South 27°54'00" East along the Northeasterly right of way line of U.S. 27 a distance of 95.64 feet thence North 62°06'00" East 250.00 feet; thence North 27°54'00" West 95.64 feet; thence South 62°06'00" West 250.00 feet to the True Point of Beginning.

PARCEL C: From the Northeast corner of said Southwest ¼; thence along the Northerly line of said Southwest ¼, South 89°21'10" West 1353.08 feet to the Northeasterly right of way line of U.S. 27; thence along said Northeasterly right of way line South 27°54'00" East 69.29 feet; thence North 89°21'10" East 7.93 feet; thence continuing along said Northeasterly right of way line South 27°54'00" East 306.35 feet to the True Point of Beginning, thence continue along the Northeasterly right of way of U.S. Highway 27, South 27°54'00" East, a distance of 166.41 feet; thence North 62°06'00" East 200 feet; thence North 27°54'00" West 166.41 feet; thence South 62°06'00" West 200 feet to the True Point of Beginning.